## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| | * |
| **Seboka K. Hailu,** | * |
| **Plaintiff** | * |
| **v.** | * |
| | * |
| **Flight Services & Systems, Inc.** | * |
| **Defendants** | * |
| | * |

## COMPLAINT FOR JURY TRIAL

## I.     JURISDICTION

1.     This action arises under the Americans with Disabilities Act of 1990 (ADA), 42
U.S.C. §§ 12101-12213 (2013) (amended 2008).

2.     Plaintiff brings this action pursuant to ADA § 107(a), 42 U.S.C. § 12117(a).

3.     ADA § 107(a), 42 U.S.C. § 12117(a), incorporates by reference Title VII of the
Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-5, which grants jurisdiction
to this Court.

4.     All preconditions to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-
5(f)(3), have been satisfied.

5.     Plaintiff filed a charge of employment discrimination on the basis of disability and
retaliation with the Massachusetts Commission Against Discrimination and Equal
Employment Opportunity Commission (hereinafter "EEOC") within 180 days of
the alleged employment discrimination on the basis of disability against him.

Page **1** of **12**

6.      The MCAD issued a "Finding of Probable Cause" on or about March 13, 2018.

7.      Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§ 451, 1331,

        1337, 1342, and 1345.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C.

        1132(e)(2).  The acts and omissions complained of herein occurred in substantial

        part in this District and Defendants may be found in this district.

## II.      PARTIES

9.      The plaintiff, Seboka Hailu, (hereinafter "Mr. Hailu"), is a citizen of the United

        States and resides at 64 Jackson Circle, Cambridge, MA  02140.

10.     The plaintiff is a disabled person as he is a person who has an impairment that

        substantially limits the major life activity of standing.

11.     Plaintiff is an individual with a "disability" within the meaning of ADA §3(2), 42

        U.S.C. § 12102(2).

12.     Plaintiff, with the reasonable accommodation of removal of the stressor and/or

        removal from his position as a Wheelchair Agent, that he suffered would have been

        able to perform the essential functions of his job as a Wheelchair Agent.

13.     Plaintiff is a "qualified individual with a disability" within the meaning of ADA

        §101(8), 42 U.S.C. § 12111(8).

14.     Flight Services & Systems, Inc., and/or any other legal entity associated therewith

        (hereinafter "FSS") is an Ohio  corporation, duly incorporated under the Laws of

        Ohio, registered in the Commonwealth of Massachusetts as a foreign corporation,

Page **2** of **12**

with a registered agent listed as:  National Registered Agents, Inc., 155 Federal Street, Suite 700, Boston, MA  02110.

15.     The defendant is a "person" within the meaning of ADA § 101(7), 42 U.S.C. § 12111(7), and Title VII § 701(a), 42 U.S.C. 2000e(a).

16.     The defendant is engaged in "industry affecting commerce" within the meaning of ADA § 101(7), 42 U.S.C. § 12111(7), and Title VII § 701(g)- (h), 42 U.S.C. 2000e(g)- (h).

17.     The defendant employed more than 25 employees for each working day in more than 20 weeks during the preceding year.

18.     The defendant is an "employer" within the meaning of ADA §101(5)(A), 42 U.S.C. § 12111(5)(A).

19.     The defendant is a "covered entity" within the meaning of ADA § 101(2), 42 U.S.C. § 12111(2).

### III.    FACTS

20. When Mr. Hailu was a child, he suffered a traumatic left leg injury that left him unable to stand for prolonged periods of time.

21. This injury does allow Mr. Hailu to stand and to work on his feet, so long as he stands briefly and spends the majority of time walking or changing his position.

22. On or about May 2, 2016, Mr. Hailu was hired by the defendant-employer as a Wheelchair Agent to work at Boston Logan International Airport.

23. His duties included pushing wheelchair-bound passengers to and from various terminals.

24. As the position does not require prolonged periods of standing, Mr. Hailu did not tell the defendant employer about his disability.

25. Regardless, Mr. Hailu's performance after his hire was more than satisfactory as evidence by his continued employment.

26. On or about July 4, 2016, Arben Kote, who worked at the defendant employer's Human Resources Department transferred Mr. Hailu to the Security Line in Terminal E.

27. This new position required Mr. Hailu to stand in the same spot all day.

28. As the requirement of standing aggravated his leg injury, Mr. Hailu informed Mr. Kote that he had a disability and that he was unable to accept this position because of his disability.

29.     Mr. Hailu explained that it was his preference to remain in the position in which he
        was hired.

30.     At this point, the defendant-employer, by and through its agent, Mr. Kote, informed
        Mr. Hailu that if he didn't want the new position, then he should leave his work
        badge and leave the premises.

31.     However, Mr. Hailu chose to wait until his next doctor's appointment to ask his
        doctor for a note regarding his need for a reasonable accommodation.

32.     On or about July 16, 2016, Mr. Hailu received a doctor's note stating that because
        of his traumatic left leg injury, he should work in a position that does not require
        standing for prolonged periods of time.  See, Exhibit A, Doctor's Note

33.     On or about July 18, 2016, Mr. Hailu gave his doctor's note to Mr. Kote.

34.     Defendant, by and through its agent, Mr. Kote, responded that Mr. Hailu could not
        work because he had workplace restrictions, and asked Mr. Hailu for his badge.

35.     Mr. Kote then called the State Police to escort Mr. Hailu from the premises.

36.     As such, the defendant terminated Mr. Hailu's employment on July 18, 2016.

**IV.    COUNT I—VIOLATION OF ADA, TITLE I**

37.     The plaintiff hereby realleges and reasserts the allegations set forth in paragraph 1
        through 36, above, as though fully set forth herein.

38.     On or about July 16, 2016, and on divers' dates thereafter, Mr. Hailu informed his
        employer of his disability, provided medical proof thereof, and requested
        accommodation therefor.

39. At all relevant times, FSS knew about the Plaintiff's disability.

40. Plaintiff requested the reasonable accommodation of remaining in his current position as a Wheelchair agent, which was in accordance with his disability and enabled him to continue performing his essential job functions.

41. Plaintiff would have been able to perform the essential functions of his job with the reasonable accommodation he requested.

42. The defendant refused to make reasonable accommodation for Plaintiff's disability and terminated him.

43. The decisions made and the actions taken by the defendant were performed by Defendant's employees in the course and scope of their employment/agency with the defendant.

44. The defendant's refusal to make reasonable accommodation for Plaintiff's known disability constitutes discrimination against Plaintiff due to his disability in violation of ADA § 102(b)(5)(A), 42 U.S.C. § 121112(b)(5)(A).

45. The Defendant acted with malice or with reckless indifference toward Plaintiff's federally protected rights as a qualified individual with a disability when it refused to make reasonable accommodations for Plaintiff's known disability.

46. As a result of the defendant's discrimination on the basis of disability, plaintiff suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

## V.     COUNT II – RETALIATORY DISCHARGE/RETALIATION in VIOLATION OF Title VII of The Civil Rights Act of 1964, 42 USC §§ 2000e-2000e-17 and M.G.L. c. 151 B §4 (1), (4)

47.     The Plaintiff hereby realleges and reasserts the allegations set forth in paragraph 1 through 46, above, as though fully set forth herein.

48.     The plaintiff, a disabled man, engaged in a protected activity when on July 18, 2016 he requested a reasonable accommodation for his disability, of which Respondent was aware.

49.     The defendant subjected the Plaintiff to an adverse employment action when his employment was terminated shortly thereafter.

50.     A causal connection exists between the protected activity and the adverse employment action.

51.     The defendant terminated the Plaintiff's employment upon receiving the plaintiff's doctor's note/proof of disability without offering accommodation or providing him with FMLA paperwork to fill out.

52.     Respondent did not have any legitimate, nondiscriminatory reasons for the termination.

53.     A causal connection exists between the protected activity and the adverse employment action in that he was terminated because of his alleged conduct.

54.     As a result of the defendant's retaliation, plaintiff suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

55.   The Plaintiff hereby realleges and reasserts the allegations set forth in paragraph 1
      through 54, above, as though fully set forth herein.

56.   The defendant, as Mr. Hailu's employer, owed a duty to Mr. Hailu to provide him
      with employment that was free from discrimination and that was not hostile, in
      order to allow Mr. Hailu to perform his employment duties.

57.   The defendants breached that duty by terminating Mr. Hailu upon receiving notice
      of his disability and failing to offer him any accommodation that would permit him
      to perform the essential functions of his employment resulting in the ultimate
      termination of Mr. Hailu.

58.   As a direct and proximate result of Defendants' negligence, Mr. Hailu suffered and
      has continued to suffer extreme emotional distress.

59.   Mr. Hailu's extreme emotional distress caused by Defendants has resulted in
      physical harm which has been manifested by objective symptomology including,
      but not limited to, appetite and weight loss, insomnia, nightmares, and increased
      fatigue and depression.

60.   As a direct and proximate result, Mr. Hailu has suffered and continues to suffer
      monetary loss and damage, was deprived of income, has suffered a reduction in his
      earning capacity, incurred and continues to incur medical expenses and suffered
      and continues to suffer other loss and damage.

## VII.  COUNT IV -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61.   The Plaintiff hereby realleges and reasserts the allegations set forth in paragraph 1 through 60, above, as though fully set forth herein.

62.   Defendant's aforementioned conduct towards Mr. Hailu was unjustified, extreme, outrageous and beyond the bounds of civilized society.

63.   Defendants intended or knew that their outrageous conduct would cause Mr. Hailu to suffer severe emotional distress.

64.   Defendants' extreme and outrageous conduct was not in furtherance of any legitimate business purpose.

65.   As a direct and proximate result of Defendants' aforementioned conduct, Mr. Hailu suffered and has continued to suffer extreme emotional distress of such severity that no reasonable person could be expected to endure it.

66.   As a direct and proximate result, Mr. Hailu has suffered and continues to suffer physically and mentally, has suffered and continues to suffer monetary loss and damage, was deprived of income, has suffered a reduction in his earning capacity, incurred and continues to incur medical expenses and suffered and continues to suffer other loss and damage.

## VIII.  COUNT V – WRONGFUL DISCHARGE

67.   The Plaintiff hereby realleges and reasserts the allegations set forth in paragraph 1 through 66, above, as though fully set forth herein.

68.   The defendant was motivated by bad faith, malice or retaliation in terminating Mr. Hailu from his position as a social worker.

69.   Mr. Hailu was discharged from his position as a Wheelchair Agent against public policy after he was subjected to extreme and outrageous discrimination, disparate treatment, and retaliation.

70.   Defendants' aforementioned conduct constitutes a breach of the implied covenant of good faith and fair dealing.

71.   As a direct and proximate result of the defendants' prohibited conduct, Mr. Hailu has suffered and continues to suffer monetary loss and damage and suffered and continues to suffer other loss and damage.

## IX.  COUNT VI – RETALIATORY DISCHARGE

72.   The Plaintiff hereby realleges and reasserts the allegations set forth in paragraph 1 through 71, above, as though fully set forth herein.

73.   The plaintiff, a man with a disability, was engaged in a protected activity in that all conduct alleged occurred as a result and/or during his employment with FSS.

74.   At all relevant times, the defendant was aware of Mr. Hailu's disability.

75.   As set out herein, the defendant subjected him to an adverse employment action in terminating his employment.

76.   Mr. Hailu was the target of an adverse employment action based on his protected class status (disability) in that he was terminated.

77.   Mr. Hailu was the target of retaliation and discrimination as a result of his disability.

Page **10** of **12**

78.    A causal connection exists between the protected activity and the adverse employment action in that he was terminated as a result of his disability.

79.    As a result of the FSS's retaliation, plaintiff suffered and continues to suffer economic losses, mental anguish, pain and suffering, and other nonpecuniary losses.

## X.    PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants for:

**80.**    Salary and benefits, and accrued interest thereon, from his date of termination until entry of judgment against Defendants;

**81.**    Compensatory damages for Plaintiff's mental anguish, pain and suffering, and other nonpecuniary losses;

**82.**    Reinstatement to the position of Wheelchair Agent, with all the rights, benefits, salary increases, as he would have had the benefit, had the discrimination not taken place;

**83.**    Punitive damages in an amount to be determined at trial;

**84.**    Plaintiff's attorneys' fees and costs of this action;

**85.**    On Counts I and II, awarding Plaintiff judgment in an amount equal to the damages sustained as a proximate result of Defendants' discrimination and retaliation;

**86.**    On Count III, awarding Plaintiff judgment in an amount equal to the damages sustained as a proximate result of Defendants' negligent infliction of emotional distress;

**87.**     On Count IV, awarding Plaintiff judgment in an amount equal to the damages sustained as a proximate result of Defendants' intentional infliction of emotional distress;

88.     On Count V, awarding Plaintiff judgment in an amount equal to the damages sustained as a proximate result of Defendants' wrongful discharge;

89.     On Count VI, awarding Plaintiff judgment in an amount equal to the damages sustained as a proximate result of Defendants' retaliatory discharge;

90.     Awarding Plaintiff attorneys' fees, costs of suit and other expenses incurred in this litigation as permitted by law;

91.     Awarding Plaintiff pre-judgment and post-judgment interest as provided by law;

92.     Awarding Plaintiff punitive damages in the amount of $500,000.00;

93.     Awarding Plaintiff all other and further relief, both general and special, at law and in equity to which she may be justly entitled; and,

94.     Such other relief as may be just and reasonable.

**DATED:  July 12, 2019**                    **RESPECTFULLY SUBMITTED,**
                                             **SEBOKA K. HAILU**
                                             **By and through his attorney,**

                                             **  /s/ Abeba Attles, Esq.**
                                             **BBO # 692566**
                                             **Abeba Attles, Esquire**
                                             **Attles Law Group**
                                             **529 Main Street**
                                             **Charlestown, MA  02119**
                                             **978-984-7292**
                                             **978-655-7483 (FAX)**
                                             **abey@attleslawgroup.com**